IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | |
| v. | * | Criminal No. CCB-10-336 |
| | * | |
| TONY COLLINS | | |

*******

## MEMORANDUM

Federal defendant Tony Collins, now in Bureau of Prisons ("BOP") custody at the Volunteers of America in Baltimore ("VOA"), has filed a motion seeking a reduction of his sentence under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. (ECF 1036). He is a non-violent drug offender who would be eligible for release from BOP custody in December 2020, but requests a reduction to time served (an approximately 9 months reduction of his sentence) so that he can be released from VOA now. The court held a conference call on March 27, 2020, the government filed an opposition on March 29, 2020,[1] and the court held another conference call on March 30, 2020. For the reasons that follow, the motion will be granted.

Collins pled guilty on October 18, 2011, to Count One of a superseding indictment charging him with conspiracy (which ended in June 2010) to distribute and possess with intent to distribute both 50 grams or more of crack cocaine and 5 kilograms or more of powder cocaine within 1000 feet of a public housing facility. At the time he was a career offender because of a 1999 robbery conviction and two drug convictions in 2003 and 2004. The government entered into a Rule 11(c)(1)(C) plea, however, for a below-guidelines sentence of 160 months, and that sentence was imposed by the court on February 2, 2012, together with a 10-year term of

---

[1] The court appreciates the government's prompt response.

supervised release.  (Judgment & Commitment Order, ECF 751).  As noted above, he is now serving the last months of that sentence at the VOA.

As the Fourth Circuit recently has ruled, Collins is eligible for relief under the First Step Act even though his offense also included five kilograms of powder cocaine.  *U.S. v. Gravatt*, ___F.3d___, 2020 WL 1327200, at *4 (4th Cir. March 23, 2020); *see also U.S. v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019).  Eligibility does not mandate relief; rather the court must consider the factors under 18 U.S.C. 3553, including post-sentencing conduct.  Those factors will now be addressed.

The offense was serious, involving significant quantities of illegal drugs distributed within Baltimore City, undoubtedly causing harm to the community, particularly around the public housing facility, Gilmor Homes.  While certain members of the conspiracy were charged with firearms offenses, there is no indication that Collins was involved with firearms or violence, nor does it appear that he was a leader or organizer of the drug conspiracy.  Collins has a prior conviction for robbery, but that dates back to 1999.  In this case he accepted responsibility by pleading guilty.  He has been in custody since June 2010.  (ECF 125).  A sentence of the length he has already served is sufficient to recognize the seriousness of his offense, promote respect for the law, provide just punishment, and adequately deter both Collins and others.

Regarding the need to protect the public, it is relevant to consider Collins' rehabilitative progress while in the BOP.  He has successfully completed significant programming, including the Residential Drug Abuse Treatment Program, (Certificate of Achievement, 1036-2 at 5), and maintained employment while incarcerated, (BOP Progress Report, ECF 1036-1).  He has a limited number of infractions, with the last one of significance dating back to 2015.  (BOP Disciplinary Record, ECF 1036-3).  He also has a reentry plan, with a home to live in found

suitable by the United States Probation Office. And he will be supervised by the Probation Office for a substantial period of time.

The government cites to the need to avoid disparities among codefendants, which the court agrees is an important consideration, but the relatively modest reduction requested here, based in part on post-sentencing conduct, does not represent a significant infringement on that principle.

Finally, the court must acknowledge the extraordinary circumstances present in the community as a result of the COVID-19 pandemic. It is well established by public health authorities that efforts should be made to permit social distancing and minimize the risks of transmission through close contact. While it has not been proffered that Collins has an underlying health condition which makes him more susceptible to the effects of the virus, and while the risks posed by a defendant's continued residence in a detention facility do not necessarily mandate release when weighed against all the factors the court must consider, here we have, as described above, a non-violent drug offender who has already served a lengthy sentence and has been determined ready for community placement at the VOA. Collins has a home ready to receive him, where he can be placed on home confinement. While traditional location monitoring (an ankle bracelet) is not currently available, other methods of monitoring may be implemented in the discretion of the Probation Office.[2]

Accordingly, the motion will be granted. A separate Order follows.

| 3/30/30 | /S/ |
|---|---|
| Date | Catherine C. Blake<br>United States District Judge |

---

[2] The court notes but disagrees with the government's suggestion that this motion represents an "end run" around the court's general lack of jurisdiction over release from VOA. To the contrary, a lack of jurisdiction over sentenced prisoners generally in no way supports a failure to exercise jurisdiction that has been given to the court by Congress under the First Step Act.